**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 13 |
| | ) | Case No. 15-40103-CJP |
| WILLIAM SILK, A/K/A WILLIAM | ) | |
| SILK, III | ) | |
| | ) | |
| Debtor | ) | |

**MEMORANDUM OF DECISION**

The debtor, William Silk, filed a *Motion for Enforcement of the Automatic Stay,
Sanctions and Attorney's Fees for Violation of the Automatic Stay Under § 362* [#41] (the
"Motion") against New Jersey Higher Education Student Assistance Authority ("HESAA").
HESAA filed an opposition [#53] (the "Opposition") to the Motion. The matter was taken under
advisement after a hearing held on November 24, 2015. For the reasons discussed below, the
Motion is granted in part, and counsel to Mr. Silk shall be directed to file an affidavit of
attorneys' fees incurred in pursuit of the Motion, which shall be subject to further proceedings
consistent with this Memorandum.

I.    Facts

 Mr. Silk filed a chapter 13 bankruptcy petition on January 19, 2015. He listed HESAA
on his creditor matrix and HESAA was served with a "Notice of Chapter 13 Bankruptcy Case,
Meeting of Creditors, & Deadlines." HESAA filed a proof of claim in the case on February 10,
2015, asserting an unsecured claim in the amount of $18,075.43 for student loan debt. The debtor

served a copy of his chapter 13 plan on HESAA on or about February 24, 2015. HESAA does

not dispute, nor could it dispute, that it received notice of Mr. Silk's bankruptcy.

Mr. Silk alleges that he "received several collection letters from HESAA" after the

commencement of his bankruptcy case. Mot. at ¶ 12. Mr. Silk submitted as exhibits to the

Motion a copy of one collection letter dated September 2, 2015, and a copy of a billing statement

dated July 15, 2015. Mr. Silk did not provides copies of or further describe any other collection

letters or statements. HESAA admits sending "post-petition demands" and states in its opposition

that this occurred because it had made a clerical error as to the status of Mr. Silk's bankruptcy in

its records. Opp'n at ¶ 5-6.

These allegations being undisputed, the parties submitted the matter for determination

based on the current record and waived discovery and the submission of further evidence at trial

or otherwise.[1]

II.    Positions of the Parties

Mr. Silk asserts that HESAA's sending of collection letters after it had actual notice that

the order for relief had entered in his case violates the automatic stay provided in 11 U.S.C. §

362[2] and constitutes "contempt of court." He requests that the Court enjoin HESAA from

continuing any post-petition collection activity and award him "sanctions," attorneys' fees and

expenses.[3]

---

[1] At the hearing, the Court indicated that if it required evidence of attorneys' fees, counsel would be directed to submit an affidavit at a later date.

[2] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

[3] Mr. Silk does not refer specifically to § 362(k), but the Court has construed the Motion as a request for

HESAA does not contest that it received actual notice of the commencement of the case, but argues that it should not be liable for a willful violation of the automatic stay. Recognizing that "a willful violation does not require 'specific intent' to violate the automatic stay," HESAA characterizes its actions as "innocent inadvertent technical violations that arise from coding issues" and, therefore, asserts it has not willfully violated the automatic stay. Opp'n at ¶ 2.

HESAA emphasizes that it acted to preclude further violations immediately after first receiving notice of its error when it reviewed the Motion by properly coding Mr. Silk's file and ensuring that an update was sent to the United States Department of Education. HESAA further asserts that it would have remedied the error even sooner had Mr. Silk or his attorney notified HESAA that Mr. Silk was receiving collection letters. Mr. Silk does not dispute HESAA's assertion that neither he nor his attorney ever attempted to contact HESAA about the collection letters prior to filing the Motion.

At the hearing, HESAA argued that it would be inappropriate to sanction HESAA and award Mr. Silk attorneys' fees or punitive damages because he did not suffer any actual damages, other than the claimed attorneys' fees. Mr. Silk asserted that attorneys' fees constitute actual damages under § 362(k) and that some amount of punitive damages should be awarded to sanction HESAA and discourage conduct that violates the automatic stay. Mr. Silk did not allege or present any evidence of a pattern of disregard for the automatic stay by HESAA in any other case or of specific inadequate policies or procedures in place at HESAA.

---

relief under 11 U.S.C. § 362(k).

III.   Discussion

Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[4] 11 U.S.C. § 362(k)(1). "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." *In re Panek*, 402 B.R. 71, 76 (D. Mass. 2009).

"A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). A "technical" violation occurs when the creditor does not have notice of the pendency of the bankruptcy case and no damages should be awarded for such a violation. *See McMullen*, 386 F.3d at 330 (finding "[a]bsent [notice of the bankruptcy] on the part of a creditor, however, the violation is merely 'technical,' and no damages are to be awarded").

---

[4] Section 362(k)'s predecessor, § 362(h), contained the same language.

4

"[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *Heghmann v. Hafiani (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004). Whether to award punitive damages "is a fact-specific determination subject to bankruptcy court discretion." *Panek*, 402 B.R. at 77.

A. "Willful" Violation of the Stay

Although HESAA asserts that its actions were technical and inadvertent citing *McMullen*, the undisputed facts make clear that it "willfully" violated the automatic stay under applicable authority. *See McMullen,* 386 F.3d at 330; *Fleet*, 196 F.3d at 268. In *McMullen*, the First Circuit Court of Appeals limited "technical" violations of the automatic stay to violations where the creditor acted without notice of the pendency of a bankruptcy case. 386 F.3d at 330. That is not the case here.

HESAA admits that it had actual notice of Mr. Silk's pending chapter 13 case. HESAA's assertion that it did not intend to violate the automatic stay when it made a clerical error, and that collection demands were automatically generated due to that error, does not immunize it from liability for a stay violation because a willful violation does not require specific intent to violate the stay. *See Fleet*, 196 F.3d at 268. While HESSA contends that its actions should be viewed as inadvertent, the First Circuit Court of Appeals in *Fleet* has explicitly rejected such an argument, holding that, where a creditor receives actual notice, "the burden shifts to the creditor to prevent violations of the automatic stay" and there is a presumption that a violation is deliberate. *See id.* at 269; *see also Duby v. United States (In re Duby)*, 451 B.R. 664, 674 (B.A.P. 1st Cir. 2011) (creditor willfully violated the automatic stay when an internal error caused it to send billing

5

statements); *Rijos v. Vizcaya (In re Rijos)*, 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) ("the 'computer did it' defense is not viable").

As HESAA does not contest that it received actual notice of the commencement of this case, under the applicable standard, HESAA's actions constitute a willful violation of the stay.

B.  Actual Damages and Attorneys' Fees

Constrained to determine that HESAA willfully violated the automatic stay, the Court must determine an appropriate award of damages under § 362(k), which mandates the award of actual damages, including attorneys' fees. *See* 11 U.S.C. § 362(k). "The burden is on the debtor to prove by a preponderance of the evidence that [he] suffered damages as a result of the stay violation." *Heghmann*, 316 B.R. at 404–05. In this case, Mr. Silk has not alleged that he suffered any actual damages other than attorneys' fees.

While some courts have held that attorneys' fees should not be awarded under § 362(k) or its predecessor § 362(h) where no other actual damages have been proven, others have held that the language of § 362(k) requires an award even where the only actual damages are attorneys' fees incurred as the result of the violation. *Compare Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir.1991) (finding that time expended bringing the motion for a temporary restraining order and contempt sanctions, in the absence of any other damage, is not the type of damage contemplated by section 362(h)), *with Duby*, 451 B.R. at 674 (holding that "[b]y requiring a debtor to incur an injury other than attorney's fees before such fees are recoverable, the USDA effectively strikes the word 'including' from the statute"). Additionally, where a debtor has failed to mitigate damages in the form of attorneys' fees by filing a motion without first attempting to resolve the matter with the creditor, some courts have concluded that the

6

debtor is not an injured party under § 362(k) and have declined to award any damages. *See, e.g.,*

*In re Schang*, No. 14-14199, 2015 WL 3441178, at *3-4 (E.D. Mich. May 28, 2015); *In re*

*Preston*, 333 B.R. 346, 351 (Bankr. M.D.N.C. 2005). Other courts consider the debtor's failure

to mitigate when determining a reasonable award of attorneys' fees. *See, e.g., Shadduck v.*

*Rodolakis*, 221 B.R. 573, 585 (D. Mass. 1998) (observing that courts have ruled that attorneys'

fees are insufficient to satisfy the damages element of 11 U.S.C. § 362(h) unless the debtor

attempts to resolve the dispute prior to filing a motion for contempt and sanctions); *Eskanos &*

*Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 12-13 (B.A.P. 9th Cir. 2002) ("Courts

especially scrutinize cases where the debtor's only injuries are those incurred in litigating the

motion for sanctions, and where there exist no circumstances warranting punitive damages."); *In*

*re Docherty*, No. 15-14124, 2016 WL 675835, at *11 (Bankr. N.D. Ohio Feb. 18, 2016)

(awarding only $500 of a requested $7,000 amount of attorneys' fees where the court concluded

that two hours of legal services "would have been sufficient for debtor's attorney to contact the

creditors and have the [violation remedied] promptly").

Under the facts and circumstances of this case, even adopting the interpretation of §

362(k) most favorable to Mr. Silk that an award of attorneys' fees may be appropriate even

absent other actual damages, "[o]nly an award of fees <u>reasonably</u> <u>incurred</u> is mandated by the

statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or

plainly excessive fees. Sound exercise of this discretion . . . provide[s] a sufficient check on any

abuses that might otherwise arise." *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-*

*Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (citation omitted) (emphasis supplied).

7

The reasonableness of fees is determined in accordance with § 330 of the Bankruptcy

Code. *See Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Lopez)*,

405 B.R. 24, 32-33 (B.A.P. 1st Cir. 2009) (holding in an appeal involving the application of §

362(k)'s predecessor that "application of the lodestar formula is the critical first step to an

assessment of attorney's fees under §§ 330 and 362(h)"). As the Bankruptcy Appellate Panel for

the First Circuit has explained,

> According to the United States Court of Appeals for the First Circuit, when awarding
> attorney's fees pursuant to a fee-shifting statute [like § 362(k)] that does not
> explicitly dictate a method for calculating fees, courts generally use the lodestar
> method to determine reasonable fees. The lodestar method entails multiplying the
> number of hours productively spent by a reasonable hourly rate . . . .
>
> After calculating the lodestar amount, the court may adjust it, up or down, in light
> of other considerations, such as the results obtained . . . . Thus, courts may reduce
> the requested fees even where the prevailing party succeeds on most or all of the
> claims if the judgment amount is small.

*Id.* at 14-15 (internal citations and quotations omitted). "[T]he Court may consider a lack of

actual damages when determining the reasonableness of attorneys' fees and costs." *Duby v.*

*United States (In re Duby)*, No. 08-1160, 2010 WL 2867447, at *2 (July 21, 2010), *aff'd in part*

*and rev'd in part on other grounds*, 451 B.R. 664, 674 (B.A.P. 1st Cir. 2011).

Moreover, while the Bankruptcy Code does not explicitly require that a debtor or debtor's

counsel contact an offending creditor prior to filing a motion for damages for violation of the

automatic stay when determining a reasonable award of attorneys' fees, *see Rijos*, 263 B.R. at 30

("Nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure suggests that such

a duty [to mitigate] exists."), the Court may consider whether actions taken were appropriate in

light of less costly or time-consuming alternatives. *See, e.g., Rosengren v. GMAC Mortg. Corp.*,

No. 00-971, 2001 WL 1149478 at *5 (D. Minn. Aug. 7, 2001) (the court limited the award of

attorney's fees for stay violation to $150 in light of the *de minimis* nature of damages and as an

amount "which reflects the court's estimation of the limited legal work required to dispose of

this matter short of litigation"); *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr.

M.D.N.C. 1998) (finding that "[a]lthough the Bankruptcy Code does not require a debtor to warn

his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to

exercise due diligence in protecting and pursuing his rights and in mitigating his damages with

regard to such violations"). Mitigation reflects "the sound judicial policy that profit-making from

violations of the automatic stay is inherently improper." *In re Docherty*, 2016 WL 675835, at *9

(internal quotations and citations omitted). "While it is incumbent upon creditors to respect the

automatic stay and cease collection activity once they are made aware of a bankruptcy filing,

debtors and their attorneys cannot use a creditor's harmless error to profit." *In re Risner*, 317

B.R. 830, 840 (Bankr. D. Idaho 2004).

While it is an assumption that the violations of the stay would have ceased after a letter

and call from counsel, Mr. Silk does not dispute that HESAA corrected its coding error promptly

upon receipt of the Motion and does not controvert HESAA's assertion that a letter would have

had the same effect. In this case, there is no basis to conclude that a communication would not

have been effective in ending any violations of the automatic stay had the debtor communicated

with the creditor, either directly himself or through counsel, prior to filing the Motion. The

debtor's counsel will be given an opportunity to file an affidavit of fees and costs incurred in

pursuing the Motion, but the Court will take the factual circumstances noted herein into account

when evaluating the reasonableness of any requested compensation.

C. <u>Punitive Damages and Injunctive Relief</u>

Mr. Silk has also sought an award of punitive damages. The Court, however, declines to award such damages recognizing that "[p]unitive damages should be awarded in an amount sufficient to serve their purpose of deterrence . . . and must be tailored not only based upon the egregiousness of the violation, but also based upon the particular creditor in violation." *Panek*, 402 B.R. at 77 (*quoting In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005)). Courts have found circumstances where parties arrogantly defy the Bankruptcy Code to be most appropriate for the award of punitive damages. *See id*.

In this case, HESAA's actions were not egregious or arrogantly defiant of the Bankruptcy Code, but caused by an apparent clerical coding error by HESAA. *See id*. Mr. Silk does not allege that these actions caused him any specific distress or that HESAA continued to attempt to collect the debt after it was informed of the violations; rather, Mr. Silk has not challenged HESAA's assertion that it updated its records and took steps to ensure that collection efforts stopped as soon as it learned of the issue. Further, Mr. Silk does not allege that HESAA engaged in a pattern of disregard for the automatic stay in relation to other cases or that it failed to adopt procedures to correct other violations of the automatic stay. As such, the Court finds that punitive damages would be not appropriate under these circumstances.

Finally, injunctive relief is not appropriate in this matter, even if such a request had been properly pursued procedurally, which was not done in the context of the Motion. It is not disputed that HESAA has already stopped its post-petition collection activity, such that there is no need to enjoin it from continuing to do so. Mr. Silk has not presented any evidence of a likelihood of further violations of the automatic stay or the possibility of irreparable harm to

10

himself or others. In in any event, the automatic stay remains in place, which should serve to safeguard Mr. Silk from collection activities for pre-petition debts.

IV.     <u>Conclusion</u>

For the reasons set forth above, the Court concludes that HESAA willfully violated the automatic stay by sending the collection letters after receiving notice of the bankruptcy case. The Court declines to award punitive damages or enter injunctive relief and further proceedings will be held on the determination of actual damages to be awarded under §362(k). A separate order shall enter consistent with this memorandum.

Dated: April 8, 2016                                              By the Court,

                                                                 _____
                                                                 Christopher J. Panos
                                                                 U.S. Bankruptcy Judge